RECEIVED

JUN 1 4 2011

TONY R. MOORE, CLERK
BY _____
        DEP JTY

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

FRANKS INVESTMENT CO., LLC

                                  CIVIL NO. 08-0097

versus                               JUDGE TOM STAGG

UNION PACIFIC RAILROAD CO.

## MEMORANDUM RULING

Before the court is a possessory action by Franks Investment Company, L.L.C. ("Franks") against Union Pacific Railroad Company ("Union Pacific"). Franks seeks an injunctive order to restore and maintain its use of four railroad crossings connecting its property with Louisiana Highway 1. Franks filed this suit on January 7, 2008. Following a two-day bench trial, this court held that Franks's state law claim was preempted by federal statute and ruled in favor of Union Pacific. On appeal, the en banc Fifth Circuit reversed, finding the federal statute does not preempt Franks's state law claim and remanded for adjudication on the merits.[1]

Having heard the evidence presented at trial and read the briefs submitted by the parties, the court makes the following findings of fact and conclusions of law in

---

[1] Franks Inv. Co. v. Union Pacific R.R. Co., 593 F.3d 404 (5th Cir. 2010).

1

accordance with Federal Rule of Civil Procedure 52:

## I. FINDINGS OF FACT[2]

Franks owns an elongated property of approximately 1,000 acres in Caddo Parish, Louisiana, the northernmost boundary of which is near the city limits of the City of Shreveport.  The property is generally bounded on the east by the Union Pacific Railroad right-of-way, on the north by Flournoy-Lucas Road, on the south by Leonard Road, and on the west by Sand Beach Bayou and Bayou Pierre (hereinafter "the Franks property").  See Appendix B.[3]  Union Pacific owns and operates a mainline track, which runs for two miles between the Franks property and Louisiana Highway 1.  At least six scheduled trains and one detour train traverse this area of the tracks each day.  Prior to December 27, 2007, four private railroad grade crossings existed along that stretch of the railroad tracks permitting access from the highway to the Franks property.  In addition, there are at least three other points of access to the property:  two off of Flournoy-Lucas Road and one off of Leonard Road.

The four private railroad grade crossings are the subject of this suit.  The crossings were principally used by Joe Dill ("Dill"), who at the time of suit leased

---

[2] The court adopts its findings of facts from the bench ruling on February 25, 2008.  See Appendix A.

[3] The court attaches the plaintiff's Exhibit C from Record Document 53, a map of the Franks property, as Appendix B.

approximately 335 acres of the Franks property for farming.  Dill used the crossings to access the property and to move his agricultural equipment on and off the property. The crossings were also used as access points by pipeline inspectors, persons involved in cleaning an oil spill on the property, those responsible for maintaining the sewer lines and levees on the property, and a real estate developer studying the property for development purposes.

Union Pacific was solely responsible for the maintenance and repair of the crossings.   At times, Union Pacific temporarily closed crossings to perform maintenance. See Trial Transcript, Vol. 2 at 65-66.  Bobby Jelks ("Jelks"), the CEO of Franks Management Company, readily acknowledged that Franks does not maintain the crossings and does not intend or desire to maintain them.  Id. at 85.  Each of the four crossings had a sign, posted by Union Pacific, declaring:  "Crossing.  No Trespassing.  Right to pass by permission subject to control of owner."  Id. at 80, 237. Franks never posted any signs at the crossings.  See id. at 73, 80.  Franks also never expressed to Union Pacific any intention to dispossess Union Pacific of the crossings or to interfere with the railroad's operations.  See id. at 73, 140.  Union Pacific never told Franks that it was trespassing.  See id. at 92.

On May 17, 2005, Union Pacific posted a sign at one of the four crossings stating that the crossing was selected for closure.  Similar signs were posted on the

3

other three crossings on October 7, 2005. See Defense Exhibits D71-1, D72-1, D73-1, D74-1. These postings led to a meeting in Houston between Franks and Union Pacific officials to oppose the closing notices. The meeting was to no avail. On December 27, 2007, Union Pacific removed the two northernmost crossings, Crossings 3 and 4. Removal of the other two crossings is still pending. Franks filed the instant lawsuit on January 7, 2008, seeking an injunctive order from this court instructing Union Pacific to reinstall two of the crossings and to refrain from removing the other two crossings.

## II. CONCLUSIONS OF LAW

In this case, Franks is asserting a possessory action against Union Pacific pursuant to Louisiana Code of Civil Procedure article 3655, claiming that it possesses a real right in the four crossings. Under Louisiana law,[4] a "possessory action" is an action "brought by the possessor of immovable property or of a real right therein to be maintained in his possession of the property or enjoyment of the right when he has been disturbed, or to be restored to the possession or enjoyment thereof when he has been evicted." La. Code Civ. P. art. 3655. To maintain the action, the plaintiff must prove the following:

---

[4] This diversity case is governed by Louisiana substantive law. See Erie R.R. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938).

(1) He had possession of the immovable property or real right therein at the time the disturbance occurred;

(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;

(3) The disturbance was one in fact or law, as defined in Article 3659; and

(4) The possessory action was instituted within a year of the disturbance.

La. Code Civ. P. art. 3658.  The parties dispute only the first two elements, namely whether Franks had possession of a real right in the railroad crossings.  See Record Document 54 at 9.

## A.    Possession Of A Real Right.

To be successful in this possessory action, Franks must prove its claim that it had possession of a real right in the railroad crossings.  The exact nature of this right is unclear, but the court need not determine the nature or ownership of the real right at issue.  Only the **possession** of the real right is relevant in this action.  See La. Code Civ. P. art. 3661 ("In the possessory action, the ownership or title of the parties to the immovable property or real right therein is not at issue."); Babineaux v. Theriot, 465 So.2d 290, 292 (La. App. 3d Cir. 1985).  For the reasons set forth below, Franks fails to prove that it acquired possession of a real right in the railroad crossings.

### 1.    Possession.

The Louisiana Civil Code defines "possession" as "the detention or enjoyment of a corporeal thing, movable or immovable, that one holds or exercises by himself or by another who keeps or exercises it in his name." La. Civ. Code art. 3421.  The Civil Code provides that "the exercise of a real right, such as a servitude, with the intent to have it as one's own is quasi-possession," and "the rules governing possession apply by analogy to the quasi-possession of incorporeals." Id.

Possession requires more than mere use. See Garner v. Holley, 968 So.2d 234, 238 (La. App. 2d Cir. 2007).  "To acquire possession, one must intend to possess as owner and must take corporeal possession[5] of the thing." La. Civ. Code art. 3424.[6] There is a general presumption that one intends to possess as owner. See La. Civ. Code art. 3427.  However, where one has permission to possess or possesses on behalf of another, he is merely a "precarious possessor." See La. Civ. Code art. 3437.[7]  A

---

[5] "Strictly speaking, one may not have corporeal possession of a servitude because one cannot have physical control of an incorporeal.  However, one may use a servitude according to its nature." 4 A.N. Yiannopoulos, Louisiana Civil Law Treatise § 178 (3d ed. 2004).

[6] In addition, the Louisiana Code of Civil Procedure states, "A plaintiff in a possessory action shall be one who possesses for himself." La. Code Civ. P. art. 3656.

[7] Louisiana Civil Code article 3437 provides that "[t]he exercise of possession over a thing with the permission of or on behalf of the owner or

precarious possessor is presumed to possess on behalf of another even if he intends to possess for himself. See La. Civ. Code art. 3438.[8]

Louisiana jurisprudence explains that "the type of possession required for a possessory action is identical to that required to commence the running of acquisitive prescription." Allen v. Belgard, 925 So.2d 1275, 1284 (La. App. 3d Cir. 2006); see also Hill v. Richey, 59 So.2d 434, 439 (La. 1952). In other words, the possession must be "actual, adverse, corporeal possession which is continuous, uninterrupted, peaceable, public, unequivocal, and within visible bounds." Allen, 925 So.2d at 1284. The possession must be adverse and not precarious, which is to say the possession must be "unauthorized use that infringes on the ownership of the servient estate" and not "with permission of or on behalf of the owner." La. Civ. Code art. 3437; Yiannopoulos, supra, § 138.

As mentioned above, a precarious possessor is presumed to possess on behalf of another. See La. Civ. Code art. 3438. A precarious possessor only begins to possess for himself "when he gives actual notice of this intent to the person on whose behalf he is possessing" and "demonstrates this intent by overt and unambiguous

_____

possessor is precarious possession."

[8] Louisiana Civil Code article 3438 states, "A precarious possessor, such as a lessee or a depositary, is presumed to possess for another although he may intend to possess for himself."

7

acts." La. Civ. Code  art. 3439[9]; see Delacroix Corp. v. Perez, 794 So.2d 862, 868 (La.

App. 4th Cir. 2000).[10]  A precarious possessor does not have the rights of a possessor

and may not assert a possessory action against the person for whom he possesses.  See

---

[9] Article 3439 of the Louisiana Civil Code states:
      A co-owner, or his universal successor, commences to possess
for himself when he demonstrates this intent by overt and
unambiguous acts sufficient to give notice to his co-owner.
      Any other precarious possessor, or his universal successor,
commences to possess for himself when he gives actual notice of this
intent to the person on whose behalf he is possessing.

[10] Louisiana Civil Code article 3439 appears to establish two distinct
methods for terminating precarious possession: (1) a co-owner is required to
demonstrate the intent by "overt and unambiguous acts," and (2) all other
precarious possessors are required to give "actual notice."  Louisiana
jurisprudence, however, combines them into one test.  As the Civil Code notes,
"[a]ccording to well-settled Louisiana jurisprudence, a precarious possessor
commences to possess for himself when he gives notice **and** manifests his intent to
possess as owner by overt and unambiguous acts."  La. Civ. Code art. 3439, cmt.
(b) (emphasis added); see also Delacroix Corp., 794 So.2d at 868-69.

8

La. Civ. Code arts. 3439, cmt. (c)[11] and 3440.[12]

### 2.   Franks Is A Precarious Possessor.

Franks claims that it possessed as owner a real right in the four crossings. Although Franks may have intended to possess as owner, the evidence demonstrates that it used the crossings permissively and without objection from Union Pacific. The crossings were at all times maintained, inspected, and repaired by Union Pacific. Union Pacific paid for the installation of the crossings and their maintenance. Franks never maintained the crossings and did not intend to start. In addition, Union Pacific posted signs at the crossings that read: "Crossing. No Trespassing. Right to pass by permission subject to control of owner." Union Pacific clearly knew of the crossings

----

[11] Louisiana Civil Code article 3439, comment (c) provides:
According to Articles 3441 and 3490 of the Louisiana Civil Code of 1870, a precarious possessor cannot acquire the 'legal possession' of the thing he detains. He does not have the legal rights of a possessor. Thus, a precarious possessor cannot prescribe, has no claims to the fruits of the property as a possessor in good faith, and is not entitled to reimbursement for expenses or improvements as a good or bad faith possessor. In this article, there is no reference to 'legal possession.' It is clear, however, that a precarious possessor, having merely the detention of the thing, does not enjoy the rights of a possessor. (internal citations omitted).

[12] Article 3440 of the Louisiana Civil Code states, "Where there is a disturbance of possession, the possessory action is available to a precarious possessor, such as a lessee or a depositary, against anyone except the person for whom he possesses."

9

and facilitated their existence. Any use by Franks was with the permission of Union Pacific.

Further, Franks's use of the crossings was not adverse, as it did not "infringe" on Union Pacific's ownership or possession. Union Pacific ran at least six scheduled trains and one detour train through that stretch of track every day. Jelks and Dill testified that Franks never intended to interfere with the railroad's operations. Union Pacific even closed crossings at times, when necessary for maintenance. As Franks's possession was with the permission of, and not adverse to, Union Pacific, Franks is a precarious possessor of the crossings and presumed to possess for Union Pacific. See La. Civ. Code art. 3438.

Franks also never terminated its precarious possession. Franks provides no evidence that it gave Union Pacific actual notice of an intent to begin possessing the crossings as owner. Jelks and Dill testified that Franks never expressed to Union Pacific any intention to dispossess Union Pacific of the crossings. Franks also fails to prove that it demonstrated an intent to possess as owner by "overt or unambiguous acts." Franks never inspected or repaired the crossings, posted any signs to indicate it owned the crossings, or took any other action that would have alerted Union Pacific of its intent to possess as owner. Franks's continued use of the crossings was not

10

sufficient to terminate its precarious possession.[13]

Franks, as a precarious possessor, does not have the rights of a possessor and may not assert a possessory action against the person for whom he possesses. <u>See</u> La. Civ. Code arts. 3439, cmt. (c) and 3440.

### III.  CONCLUSION

In conclusion, Franks cannot maintain this possessory action against Union Pacific as it is merely a precarious possessor of the railroad crossings and does not have the rights of a possessor.  Accordingly;

**IT IS ORDERED** that judgment be rendered in favor of defendant Union Pacific and that Franks takes nothing.

A judgment consistent with the terms of this Memorandum Ruling shall issue

---

[13] As owner of the crossings, Union Pacific is presumed to possess the crossings to their fullest extent, and "[t]he intent to retain possession is presumed unless there is clear proof of a contrary intention." La. Civ. Code art. 3432; <u>see</u> <u>Johnson v. La Bokay Corp.</u>, 326 So.2d 589, 593 (La. App. 3d Cir. 1976).  In the absence of abandonment, possession is lost only if the possessor is "evicted by another by force or usurpation." La. Civ. Code art. 3433.  Louisiana jurisprudence mandates that "for a disturbance to be sufficient to interrupt another's right to possess, the disturbance must bring home to the actual possessor the realization that his dominion is being seriously challenged." <u>Mire v. Crowe</u>, 439 So.2d 517, 522 (La. App. 1st Cir. 1983). "In addition, the person with the right to possess must acquiesce in the interruption for more than a year without contradicting any act of possession or without interfering with the usurper's possession." <u>Id.</u> Franks has not shown that it usurped the crossings or that Union Pacific acquiesced without any contradictory acts of possession.

herewith.

**THUS DATED AND SIGNED** at Shreveport, Louisiana, this __13<sup>the</sup>__ day of

June, 2011.

_____
JUDGE TOM STAGG